**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KONSTANTINOS TASIOS,
<u>Petitioner-Appellee,</u>

v.

JANET RENO; DORIS MEISSNER,
Commissioner of the Immigration
and Naturalization Service; PATRICK

J. WALTERS, as the Officer in
Charge for the Charlotte
Subdivision Office of the
Immigration and Naturalization
Service,
<u>Respondents-Appellants.</u>

No. 99-6061

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-98-16)

Argued: September 24, 1999

Decided: February 28, 2000

Before LUTTIG, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge Michael wrote the opinion, in
which Judge King joined. Judge Luttig wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** John Darren Williams, Office of Immigration Litigation,
Civil Division, UNITED STATES DEPARTMENT OF JUSTICE,

Washington, D.C., for Appellants. Lee P. Gelernt, AMERICAN CIVIL LIBERTIES UNION, New York, New York; Cynthia Ann Aziz, C. A. AZIZ, P.A., Charlotte, North Carolina, for Appellee. **ON BRIEF:** David W. Ogden, Acting Assistant Attorney General, Christopher C. Fuller, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Sean P. Devereux, LAW OFFICE OF SEAN DEVEREUX, Asheville, North Carolina, for Appellee.

_____

**OPINION**

MICHAEL, Circuit Judge:

Konstantinos Tasios petitioned for a writ of habeas corpus in federal district court, challenging the INS's refusal to consider his application for a discretionary waiver of deportation. The INS argued that the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) divested the district court of subject matter jurisdiction. In addition, the INS argued that under AEDPA § 440(d) Tasios's 1995 drug conspiracy conviction barred him from making any application for discretionary relief. The district court rejected both arguments, granted Tasios's petition, and instructed the INS to make a determination on Tasios's application for a waiver of deportation. The INS appeals, and we affirm.

I.

Tasios is a Greek citizen who has been a lawful permanent resident of the United States since 1967 when, at age 10, he came to this country with his family. His six-year-old son, three brothers, and an uncle are U.S. citizens, while his parents are lawful permanent residents. In 1995 Tasios was indicted on a single count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. He entered a plea agreement with the government (and pled guilty) on the understanding that he would be sentenced to less than five years in prison and thus be eligible to seek relief from deportation. Tasios and

the government stipulated to facts, including the drug amount, that led the district court to find that his total offense level was 15. This, together with Tasios's criminal history category of I, yielded a guideline imprisonment range of 18 to 24 months; he was sentenced to 18 months in prison. Tasios's drug conviction satisfied the definition of an "aggravated felony," as defined in the Immigration and Nationality Act (INA) § 101(a)(43), 8 U.S.C. § 1101(a)(43) (1995), and thus rendered him deportable. See INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a) (2)(A)(iii) (1995), recodified at 8 U.S.C. § 1227(a)(2)(A)(iii) (1999). Nevertheless, because his actual prison sentence was under five years, Tasios (in 1995) could still apply to the Attorney General for discretionary relief from deportation, see INA§ 212(c), 8 U.S.C. § 1182(c) (1995), and ultimately petition for review in the court of appeals.

In the year following Tasios's plea and sentence, Congress passed the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996). That legislation, which worked sweeping changes in the immigration laws, is relevant to this case in two respects. First, AEDPA§ 440(d) amended INA § 212(c) to preclude discretionary relief for aliens, like Tasios, who have been convicted of drug trafficking offenses, regardless of the length of the sentence. Second, AEDPA and IIRIRA combined to narrow the availability of appellate review over deportation proceedings. See Bowrin v. INS, 194 F.3d 483, 486 (4th Cir. 1999); Hall v. INS, 167 F.3d 852, 854-56 (4th Cir. 1999).

In November 1996 the INS initiated deportation proceedings against Tasios. He conceded deportability and sought discretionary relief under INA § 212(c). The immigration judge issued an order of deportation and denied Tasios's § 212(c) application, reasoning that AEDPA § 440(d) applied retroactively to convictions entered before its enactment. After exhausting his administrative remedies, Tasios petitioned for a writ of habeas corpus in federal district court, arguing that the INS's interpretation of § 440(d) was incorrect. The district court held that it had habeas jurisdiction over Tasios's claim pursuant to 28 U.S.C. § 2241 and that AEDPA § 440(d) did not apply retroactively. The INS appeals both determinations. We affirm the district court for the reasons set out below.

3

II.

The INS challenges the district court's holding that AEDPA and IIRIRA do not eliminate that court's jurisdiction to decide Tasios's claim under 28 U.S.C. § 2241. First, the INS contends that the 1961 enactment of the INA implicitly repealed § 2241 jurisdiction over claims arising from deportation proceedings. In the alternative, the INS argues that AEDPA implicitly repealed § 2241 habeas jurisdiction for aliens who are deportable because they committed certain crimes. Finally, the INS argues that INA § 242(g), as amended by IIRIRA, repealed § 2241 habeas jurisdiction over Tasios's claim that the Attorney General has misinterpreted AEDPA § 440(d). Each of these arguments is foreclosed by our recent holding in Bowrin that district courts have jurisdiction under § 2241 to review the very claim presented here, one involving a question of law relating to the administrative denial of § 212(c) relief. See Bowrin, 194 F.3d at 489-90.

III.

After the INS ordered Tasios's deportation in August 1997, he sought discretionary relief under INA § 212(c), 8 U.S.C. § 1182(c).[1] Prior to AEDPA that section permitted the Attorney General to waive deportation so long as the person subject to deportation had not committed an aggravated felony and had not served five years or more in prison. See 8 U.S.C. § 1182(c) (1995). Thus, when Tasios pled guilty to conspiracy to possess with intent to distribute cocaine, his conviction for that offense would not have precluded him from applying for § 212(c) relief if the INS tried to deport him. The following year, however, AEDPA § 440(d) expanded the list of criminal convictions that would render a person ineligible for § 212(c) relief. Under the amended law any alien who "has been convicted of a violation of (or a conspiracy or an attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance, other than a single offense involving possession for one's own use of 30 grams or less of marijuana is deportable" and ineligible for

_____

[1] Section 212(c) was repealed by IIRIRA § 304(b). Under IIRIRA's transitional rules, however, § 212(c) continues to apply, subject to certain restrictions.

4

discretionary waiver of deportation. 8 U.S.C. § 1227(a)(2)(B)(i); AEDPA § 440(d).

As we noted above, after the INS sought to deport Tasios because of his drug conviction, Tasios conceded deportability and sought § 212(c) relief. The immigration judge denied Tasios's application for § 212(c) relief, and the Board of Immigration Appeals (BIA) dismissed his appeal. The immigration judge and the BIA relied on the Attorney General's decision in Matter of Soriano , Int. Dec. 3289, 1996 WL 426888, at *38 (Op. Att'y Gen. Feb. 21, 1997), which held that AEDPA § 440(d) bars an alien convicted of an aggravated felony from seeking relief pursuant to section 212(c) of the Act, regardless of the date of his conviction. Tasios argues, and the district court agreed, that the INS erred in applying AEDPA § 440(d) retroactively.

We begin by asking "whether Congress has expressly prescribed the statute's [temporal] reach." Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). "If there is no congressional directive on the temporal reach of a statute, we determine whether the application of the statute to the conduct at issue would result in a retroactive effect. If so, then in keeping with our `traditional presumption' against retroactivity, we presume that the statute does not apply to that conduct." Martin v. Hadix, 527 U.S. 343, ___, 119 S. Ct. 1998, 2003 (1999). We conclude that Congress has not clearly indicated the temporal reach of AEDPA § 440(d) and that application of the section to pleas of guilt or concessions of deportability predating AEDPA's enactment would have retroactive effect. Thus, we affirm the district court.

A.

To determine whether AEDPA § 440(d) reaches backward, we of course begin with the language of the statute, using the normal rules of statutory construction. See Lindh v. Murphy , 521 U.S. 320, 326 (1997). If Congress has made its intent clear, while acting within the limits of its power, our inquiry is concluded. As we demonstrate below, however, Congress's intent to make AEDPA§ 440(d) retrospective or prospective is anything but clear.

The question before the Supreme Court in Lindh  was whether AEDPA § 104, which amended 28 U.S.C. § 2254(d), applied to non-

5

capital habeas proceedings that were pending at the time of AEDPA's enactment. As § 104 was silent on that point, the Court turned to the general scheme of AEDPA, in particular AEDPA Title I, which contains § 104. The Court noted that Title I stands "independent of the Act's other titles" in that it provides for "the revision of federal habeas corpus practice, and does two main things." Lindh, 521 U.S. at 326 (footnote omitted). First, §§ 101-106 amended various provisions of Title 28, Chapter 153, which governs all habeas corpus proceedings in the federal courts. None of these sections contains any language suggesting that those amendments do or do not apply to pending cases, and none has an effective date. Second, § 107 created an entirely new Chapter 154 for habeas proceedings in capital cases. Section 107(c), in contrast to §§ 101-106, expressly states that Chapter 154 will "apply to cases pending on or after the date of enactment of this Act." AEDPA § 107(c); Lindh, 521 U.S. at 327.

Thus, by explicitly stating that the new Chapter 154 applies to pending cases, Congress implied that the amendments to Chapter 153 do not. See Lindh, 521 U.S. at 330. That interpretation finds further support in the legislative history, which reveals that the two chapters had been joined into a single bill shortly before§ 107(c)'s retroactivity provision was inserted. See id. & n.6. The different treatment, then, was no accident, since "a thoughtful Member of the Congress was most likely to have intended what the later reader sees by inference." Id. This "negative implication" expressed Congress's intent that Chapter 153 apply prospectively only, obviating any need to determine whether application to pending cases would have actual retroactive effect. See id. at 326, 327-28.

Like AEDPA §§ 101-106, § 440(d) contains no provision expressly stating whether it applies to pending cases. As the district court observed, however, other provisions of AEDPA Title IV are explicitly retroactive. See, e.g., AEDPA § 401(f) (applying provisions of new INA Title V to all aliens "without regard to the date of entry or attempted entry"); id. § 413(g) (applying section to "applications filed before, on, or after" AEDPA's date of enactment). Most of our sister circuits, observing this difference in treatment, have applied Lindh's rule of negative implication and concluded that Congress intended for § 440(d) to apply prospectively only. See Goncalves v. Reno, 144 F.3d 110, 128-29 (1st Cir. 1998), cert. denied , 119 S. Ct. 1140 (1999);

6

Henderson v. INS, 157 F.3d 106, 129-30 (2d Cir. 1998), cert. denied, 119 S. Ct. 1141 (1999); Sandoval v. Reno, 166 F.3d 225, 241-42 (3d Cir. 1999); Pak v. Reno, 196 F.3d 666, 675-76 (6th Cir. 1999); Mayers v. INS, 175 F.3d 1289, 1302-03 (11th Cir. 1999). But see Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1150 (10th Cir. 1999) (applying Lindh and finding the intended reach of § 440(d) ambiguous). Although we agree with the conclusion that § 440(d) is prospective only, we cannot agree that Lindh's rule of negative implication applies here.

While AEDPA Title IV contains some provisions that are explicitly retroactive, others are explicitly prospective. See, e.g., AEDPA § 441(b) (amendment limiting collateral attacks on deportation orders in criminal proceedings applies "to criminal proceedings initiated after the date of enactment" of AEDPA); id. § 440(f) (section 440(e)'s amendments to definition of "aggravated felony" apply to "convictions entered on or after the date of the enactment" of AEDPA). But see id. § 440(f) (containing proviso that § 440(e)(3), relating to alien smuggling, should apply retroactively "as if included in the enactment of section 222 of the Immigration and Nationality Technical Corrections Act of 1994"). The various time frames and triggering events scattered about AEDPA Title IV stand in marked contrast to Title I's (relatively) neat disjunction between the silence of §§ 101-106 and the clear statement of § 107(c). Consequently, an examination of Title IV provides little help in discerning what "a thoughtful member of the Congress was most likely to have intended." Lindh, 521 U.S. at 330.

In addition, the substantive provisions of Title IV also address distinct subject matters. As the Court recently explained, the negative implication argument in Lindh

> carried special weight because both chapters addressed similar issues: Chapter 153 established new standards for review of habeas corpus applications by state prisoners, and chapter 154 created new standards for review of habeas corpus applications by state prisoners under capital sentences. Because both chapters "govern[ed] standards affecting entitlement to relief" in habeas cases, "[i]f . . . Congress was reasonably concerned to ensure that chapter 154 be applied

7

> to pending cases, it should have been just as concerned
> about chapter 153."

Martin, 527 U.S. at ___, 119 S. Ct. at 2005 (quoting Lindh, 521 U.S. at 329). In contrast, we cannot be confident that Congress's clear intent to make, say, § 413 (Denial of Other Relief for Alien Terrorists) retroactive or § 441 (Limitation on Collateral Attacks on Underlying Deportation Order) prospective says much of anything about its intent with respect to §440(d)'s bar on § 212(c) relief. See id. (refusing to apply Lindh analysis to "wholly distinct" provisions of the Prison Litigation Reform Act). Ultimately, our examination of the sometimes retrospective, sometimes prospective provisions that surround AEDPA § 440(d) unveils the Janus-like faces of Congress, but leaves its mind concealed.

Courts routinely confront such ambiguities in legislative drafting and have developed judicial default rules for just such occasions. Among the most venerable of these default rules is the presumption against statutory retroactivity. See Landgraf , 511 U.S. at 273. Absent "clear evidence of congressional intent that[a statute] should apply to cases arising before its enactment," the presumption against statutory retroactivity is not rebutted. Id. at 286. This presumption rests firmly on principles of fairness and political accountability. Fairness dictates that people have an opportunity to know what the law is and conform their conduct accordingly; "settled expectations should not be lightly disrupted." Id. at 265. And because there is a risk that the legislature "may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals," id. at 266, a clear evidence rule assures that Congress itself has considered any potential unfairness and allocates to Congress political responsibility for weighing that unfairness against the benefits of the legislation. See id. at 272-73. Here, there is no clear evidence that Congress has considered and decided § 440(d)'s temporal reach, and thus we presume that Congress intended that § 440(d) have no retroactive effect.

B.

The INS agrees that § 440(d)'s proper reach "is not clearly defined." Appellant's Br. at 29. See also Matter of Soriano, 1996 WL 426888 (noting that "nothing in the language of .. . § 440(d) specifies

8

either that it is to be applied in pending deportation proceedings, or that it is not to be"). Nevertheless, that section may be applied to Tasios, the INS argues, because such application has no actual retroactive effect. We disagree. As we illustrate below, application of AEDPA § 440(d) to guilty pleas or concessions of deportability that predate AEDPA's enactment has an undeniably retroactive effect.

"A statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." Landgraf, 511 U.S. at 269. Rather, a statute that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" has true retroactive effect. Id. at 280. In determining whether a statute operates retroactively, we turn to "familiar considerations of fair notice, reasonable reliance, and settled expectations." Id. at 270. Those considerations, in turn, rest on the principle that "individuals should have an opportunity to know what the law is and to conform their conduct accordingly." Id. at 265.

We considered a question similar to the one presented here, though in dictum, in De Osorio v. INS, 10 F.3d 1034, 1041-42 (4th Cir. 1993). The De Osorios were convicted of drug offenses in 1986 and early 1988. When the INS moved to deport them, they sought § 212(c) relief. Meanwhile, in November 1988 Congress enacted the Anti-Drug Abuse Act of 1988, which defined the De Osorios' offenses as "aggravated felonies." The Immigration Act of 1990 then amended INA § 212(c) to make discretionary relief unavailable to aliens who had been convicted of these aggravated felonies. The De Osorios argued that the definition of aggravated felony enacted in 1988 did not apply retroactively to their prior convictions. We disagreed, concluding that the INS's interpretation of the Anti-Drug Abuse Act's definition of aggravated felony as applying to convictions before, on, and after that Act's effective date, was a permissible construction of the statutory language under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). See De Osorio, 10 F.3d at 1041. Here the INS does not ask us to defer to its interpretation of § 440(d)'s temporal reach; indeed, the INS offers no interpretation on this score, conceding that the statute's reach is not clearly defined. Although we resolved the issue in De Osorio by deferring to the INS, we went on to say that application

9

of the amended § 212(c) to the De Osorios was not retroactive in any event. Id. at 1041-42. We made two observations in support of this dictum. First, we suggested that the "past aggravated felony conviction is only the prerequisite for prospective denial of discretionary relief." Id. at 1042. Second, we noted that the De Osorios could not plausibly argue that they relied on the availability of discretionary relief from deportation when they chose to violate the drug laws. See id.[2] Since we decided De Osorio, the Supreme Court has decided a number of cases involving retroactivity principles. See, e.g., Martin; Lindh; Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939 (1997); Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994); Landgraf. In light of this recent guidance from the Supreme Court, we conclude that the observations made in De Osorio do not account for the essential retroactive consequences of removing the availability of § 212(c) relief.

"The `principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" Landgraf, 511 U.S. at 265 (quoting Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)). When the legal effect of conduct is determined by subsequently enacted law, that law operates retroactively. In considering whether § 212(c) would alter the legal effect of conduct that predates AEDPA's enactment, we do not limit our analysis to the conduct that resulted in the felony conviction. See Hughes Aircraft, 520 U.S. at 951 (finding that amendment had retroactive effect on prior conduct, whether relevant conduct was the submission of a false claim or the defendant's disclosure of the false claim to the government). While no one could reasonably rely"on the availability of a discretionary waiver of deportation when choosing to engage in illegal drug activity," De Osorio, 10 F.3d at 1042, there are at least two circumstances in which a person could reasonably modify his conduct in reliance on the prospect of § 212(c) relief. First, an alien might waive the right to trial and plead guilty to a criminal charge, banking on a lighter sentence that would preserve the availability of

_____

**2** The De Osorios did not make this second argument. See De Osorio, 10 F.3d at 1042 ("The Osorios make no argument, nor could they, that they somehow relied on the availability of a discretionary waiver of deportation when choosing to engage in illegal drug activity.").

10

a § 212(c) waiver. See Mojica v. Reno, 970 F. Supp. 130, 175-78 (E.D.N.Y. 1997); Matter of Soriano, 1996 WL 426888. Second, an alien might concede deportability, despite having a colorable defense, knowing that the facts of his case provide a good possibility of § 212(c) relief. See Reyes-Hernandez v. INS, 89 F.3d 490, 492 (7th Cir. 1996) ("Considering the fell consequences of deportation, especially in cases of exceptional hardship, which are precisely the cases in which an appeal to section 212(c) would have a chance of success, we think it unlikely that Congress intended to mousetrap aliens into conceding deportability by holding out to them the hope of relief under section 212(c) only to dash that hope after they had conceded deportability."). Because the grounds for a criminal alien to challenge deportability are narrow and specific, there will be few cases in which such an alien has a colorable defense. Nevertheless, the possibility of a successful defense cannot be ruled out categorically. At least one fact confirms that it was reasonable for an alien to rely on the prospect of § 212(c) relief when pleading guilty or conceding deportability: in the years immediately preceding the enactment of AEDPA, immigration judges and the BIA granted over half of the § 212(c) applications they decided.**3** See Mojica, 970 F. Supp. at 178. Moreover, when applications were denied, review was available in the courts of appeals, which vacated those denials "on a nontrivial number of occasions." Reyes-Hernandez, 89 F.3d at 492.

_____

**3** In evaluating an application for § 212(c) relief, the INS "balances the social and humane considerations in the alien's favor against any adverse factors that demonstrate his or her undesirability as a permanent resident in the United States." De Osorio, 10 F.3d at 1038.

> The [BIA] has described factors favoring relief as including: family ties in the United States; residence of a long duration; military service; a history of employment; good character; rehabilitation; and evidence of value and service to the community. Matter of Marin, 16 I & N 581, 58485 (B.I.A. 1978). Factors weighing against relief include: the underlying ground for exclusion; violation of the immigration laws; the nature, recency, and seriousness of a criminal record; and any other evidence of an alien's bad character or undesirability as a permanent resident. Id.

De Osorio, 10 F.3d at 1038 n.3.

11

Thus, prior to the passage of AEDPA the legal effect of pleading guilty or conceding deportability was mitigated by the realistic possibility of obtaining a waiver under § 212(c)."That an alien charged with a crime involving controlled substances would factor the immigration consequences of conviction in deciding whether to plead or proceed to trial is well-documented." Magana-Pizano v. INS, No. 97-15678, 1999 WL 1249703, at *8 (9th Cir. Dec. 27, 1999). By withdrawing the availability of that relief, AEDPA § 440(d) worked a fundamental change in the legal effect of such a plea or concession. See id., 1999 WL 1249703, at *8; Reyes-Hernandez , 89 F.3d at 492-93. It is of no consequence here that § 212(c) relief is discretionary. As cases decided under the Ex Post Facto Clause establish, any change from a system of discretionary relief to one of prescribed outcomes is retroactive. See, e.g., Lindsey v. Washington, 301 U.S. 397, 401 (1937) (maximum sentence changed from discretionary to mandatory); Fender v. Thompson, 883 F.2d 303, 305-07 (4th Cir. 1989) (revocation of parole eligibility). See also Hughes Aircraft, 520 U.S. at 948 (analogizing to Ex Post Facto Clause cases in retroactivity analysis).

Finally, we are unpersuaded by the government's argument that § 440(d) has no retroactive effect because it simply deprives the Attorney General of the power to grant relief and thus is analogous to a new jurisdictional rule. Appellant's Br. 33-34. Here the government cites Landgraf, which said that a new jurisdictional rule "normally governs [pending cases] . . . because jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties." Landgraf, 511 U.S. at 274 (internal quotations omitted). Assuming that § 440(d) is in some sense jurisdictional, we cannot agree that its elimination of jurisdiction lacks retroactive effect. The Landgraf language on which the government relies was subsequently qualified by the unanimous Court in Hughes Aircraft. In the latter case the Court rejected the argument that a new statute creating jurisdiction should presumptively be given retroactive effect, distinguishing between statutes "merely addressing which court shall have jurisdiction to entertain a cause of action" and those that affect "whether [a claim] may be brought at all." Hughes Aircraft, 520 U.S. at 951. The elimination of jurisdiction to grant§ 212(c) relief, no less than its creation, "speaks not just to the power of a particular court but to the substantive rights of the parties as well." Id. See also Matter

12

of Soriano, 1996 WL 426888 ("[T]here is no alternative tribunal to which the criminal alien may petition."). Section 440(d) is thus subject to the presumption against retroactivity, see id., and that presumption has not been rebutted, see part III.A., supra.

C.

For these reasons, we conclude that AEDPA § 440(d), if applied to guilty pleas or to concessions of deportability made before AEDPA's effective date, would upset reasonable, settled expectations and change the legal effect of prior conduct. Because Congress has not expressly commanded such retroactive effect, § 440(d) is inapplicable in those cases.

IV.

In summary, we hold that the district court had habeas corpus jurisdiction under 28 U.S.C. § 2241 to review Tasios's challenge to the Attorney General and the INS's interpretation of AEDPA § 440(d). On the merits, we hold § 440(d)'s bar of relief under § 212(c) should not apply to aliens who pled guilty to aggravated felonies, or who conceded deportability, prior to AEDPA's effective date. The judgment of the district court is therefore

AFFIRMED.

LUTTIG, Circuit Judge, concurring:

I concur in the judgment of the court and I join in the court's opinion. I do so on the question of whether the district court (and we) have jurisdiction, because I am bound by this court's opinion in Bowrin v. United States Immigration & Naturalization Service , 194 F.3d 483 (4th Cir. 1999). I join the court's opinion with respect to the retroactive effect of the enactment of AEDPA's section 440(d) largely, though not exclusively, because of the Supreme Court's decision in Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939 (1997), which was decided after both this court's opinion in De Osorio v. United States Immigration & Naturalization Service, 10 F.3d 1034 (4th Cir. 1993), and the Attorney General's opinion in In re Soriano, 1996 WL 426888 (Feb. 21, 1997).

13

I realize that the United States disagrees with this court's decision in <u>Bowrin</u>, and with today's decision to the extent that it follows <u>Bowrin</u>, and I presume that the United States will seek rehearing en banc of today's judgment that jurisdiction lay in the district court to adjudicate Tasios' claims. I presume that, if the United States does seek rehearing en banc of our jurisdictional decision, it will likewise seek rehearing en banc of our judgment on the merits that section 440(d) is impermissibly retroactive as applied to petitioner Tasios. Should it do so, it should, insofar as I am concerned, address itself more fully than it did in its brief before this court to those portions of the Supreme Court's unanimous opinion in <u>Hughes Aircraft</u> in which the Court explained that our attention must be directed not only to the petitioner's primary conduct, but also to any relevant secondary conduct, and distinguished between statutes that address merely which forum shall have jurisdiction and statutes that withdraw jurisdiction altogether, as well as to the implications of the Court's opinion in <u>Hughes Aircraft</u> for the Attorney General's decision in <u>In re Soriano</u>. And, again only insofar as I am concerned, it should also address itself more fully than it did in its brief before this court to the very specific question of whether the legal consequences of Tasios' guilty plea were altered by the enactment of section 440(d).

14