**Helena FUTERYAN–COHEN,**
**Petitioner,**

v.

**IMMIGRATION AND NATURAL-**
**IZATION SERVICE, et al.,**
**Respondents.**

**No. CIV. A. 2:01CV171.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 18, 2001.

Helena Futeryan–Cohen, pro se.

Susan Watt, Esquire, United States Attorney's Office, Norfolk, VA, for Defendant.

## OPINION

FRIEDMAN, District Judge.

Petitioner Helena Futeryan–Cohen and her thirteen year-old son, Boris Futeryan, who are both citizens of Israel, are currently subject to a final order of removal from the United States. On March 7, 2001, Ms. Futeryan–Cohen, proceeding *pro se,* filed with this Court a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 in which she requests a stay of deportation while she seeks discretionary relief from removal. On March 29, 2001, the Court held a hearing concerning Ms. Futeryan–Cohen's *habeas* petition. For the reasons stated on the record during the hearing, the Court entered an order granting Ms. Futeryan–Cohen's *habeas* petition, staying her and Boris Futeryan's removal, and requiring the Petitioner to file the appropriate applications for discretionary relief on or before April 12, 2001.[1] The Court advised the parties

---

1. The *habeas* petition filed with the Court relates only to Ms. Futeryan–Cohen and not to her son. Boris Futeryan, who was born on January 6, 1988, is also currently subject to a warrant for removal or deportation. The United States, during the March 29, 2001 hearing, agreed that it would take no action with respect to Boris Futeryan while the Court-ordered stay of removal related to Ms. Futeryan–Cohen's *habeas* petition is in effect.

that it would issue the following written Opinion supplementing the Court's ruling issued from the bench on March 29, 2001.

## I. Factual and Procedural Background

The procedural history and facts of this case are not in dispute. Petitioner was born in the former Soviet Union and is an Israeli citizen. Government's Exhibit A, p. 5. On March 26, 1993, Petitioner, her then husband Yaakov Futeryan, and their son, Boris Futeryan, entered the United States at New York, New York. At that time, they were admitted as "Visitors for Pleasure" with authorization to remain in the United States for a temporary period which expired on September 23, 1993. *Id.*, at 29, 83.

On or about August 25, 1993, Petitioner's husband filed a Request for Asylum in the United States which listed the Petitioner and Boris as family members. *Id.*, at 104.[2] Mr. Futeryan's asylum application was premised on alleged mistreatment that he and his family suffered in Russia and Israel due to their religion and nationality. *Id.*, at 105. Both Mr. Futeryan and the Petitioner submitted affidavits in support of the asylum petition in which they described instances of this alleged mistreatment. *Id.*, at 107–113. On or about August 25, 1993 and while the asylum petition was pending, Petitioner completed an Application for Employment Authorization, which was filed with the Immigration and Naturalization Service ("INS"). *Id.*, at 123. This application was approved and Petitioner's employment was authorized on or about December 16, 1993. *Id.*[3]

On September 1, 1994, the INS denied the Futeryans' asylum petition. *Id.*, at 104. On September 8, 1994, the INS issued an Order to Show Cause charging that Petitioner was subject to deportation due to remaining in the United States beyond September 25, 1993 without authorization. *Id.*, at 83–87. This Show Cause Order advised the Petitioner that she would receive further notice regarding the date and time she was to appear for a hearing before an Immigration Judge of the Executive Office of Immigration Review of the Department of Justice. *Id.*, at 85. On September 22, 1994, Satnam Singh entered his appearance as an attorney on behalf of the Futeryans in relation to the deportation proceedings against them. *Id.*, at 118–19.

On July 17, 1995, Dr. Gerald Einhorn, D.D.S. filed an Application for Alien Employment Certification with the Department of Labor relating to the Petitioner. Dr. Einhorn described Petitioner's job as a full-time Dental Receptionist/Clerk. *Id.*, at 27. This certification was approved by the Department of Labor on April 16, 1996. *Id.*

On November 9, 1995, an Immigration Judge found the Petitioner deportable under the charges contained in the Show Cause Order. *Id.*, at 81. At the hearing, the Petitioner admitted the charges in the Show Cause Order, withdrew her asylum application, and waived her right to appeal the decision of the Immigration Judge. *Id.*, at 66. The Immigration Judge granted the Petitioner's request for voluntary departure in lieu of deportation. *Id.*, at 81. Although the Immigration Judge's written

---

2. It appears that the Petitioner did not file a separate asylum petition because she was unable to assemble the necessary documentation by the applicable deadline. Government's Ex. C, at 10.

3. During the hearing on Ms. Futeryan–Cohen's *habeas* petition, the United States suggested that Petitioner no longer possesses a valid employment authorization. No evidence on this point has been offered, however, and the Court makes no finding with respect to the Petitioner's employment status.

order does not provide a specific date by which the Petitioner was to voluntarily depart, the order did notify her that, if she failed to depart as required, the order would be withdrawn without further notice or proceedings and she would be deported to Israel. *Id.* The Immigration Judge gave the Petitioner oral notice that she was required to voluntarily depart the United States on or before May 9, 1996. *Id.*, at 64, 66. The Immigration Judge's written order, however, allowed for extensions of the time in which Petitioner was permitted to voluntarily depart as may be granted by a district director of the INS. *Id.*, at 81.

By letter dated May 5, 1996, Petitioner's attorney requested that the district director extend the deadline for her voluntary departure to November 9, 1996. *Id.*, at 64–65. This letter acknowledges that the Immigration Judge orally ordered the Futeryans to voluntarily depart by May 9, 1996. *Id.* As grounds for the extension, Petitioner's attorney advised the district director that her father, mother, sister, and other close family members were all legal permanent residents of the United States living in Norfolk, Virginia and that Petitioner was the beneficiary of an approved Department of Labor certification. *Id.* On May 16, 1996, the district director denied this request for an extension, but modified the date for voluntary departure to June 18, 1996 to permit Boris to complete the school year. *Id.*, at 74–76.

Sometime in May 1996, Petitioner and Yaakov Futeryan separated. *Id.*, at 36. By decree of the Circuit Court for the City of Norfolk dated August 17, 1997, the Petitioner was awarded a divorce *a vinculo matrimonii* from Mr. Futeryan and was awarded custody of Boris. *Id.*, 35–38. At some point in time, Mr. Futeryan apparently left the United States. Petitioner alleges that her ex-husband is currently in Israel.

On February 10, 1997, Riva B. Dzyura, the Petitioner's mother who is a naturalized citizen of the United States, filed a Form I–130 immigrant visa petition for alien relative on behalf of the Petitioner. *Id.*, at 28. On March 25, 1997, this petition was approved pursuant to Section 201(a)(3) of the Immigration and Nationality Act ("INA") because Petitioner is the married daughter of a United States citizen. *Id.* The INS's Notice of Action approving the petition advised, however, that Ms. Futeryan–Cohen was not eligible to file a petition for adjustment of status at that time. *Id.* On May 17, 1997, Petitioner's Israeli passport expired. *Id.*, at 5.

On October 11, 1997, Petitioner married Bruce Cohen, a United States citizen. *Id.*, at 34. On April 23, 1998 and September 16, 2000, Petitioner gave birth to daughters in the United States. *Id.*, at 42–43.

On January 2, 2001, a district director of the INS issued a Warrant of Removal/Deportation directed at the Petitioner and a Warning to Alien Removed or Deported advising her that once removed she is prohibited from entering or attempting to enter the United States for a period of 10 years. *Id.*, at 72–73. This warrant commanded that the Petitioner be taken into custody and removed from the United States. The district director explained that removal was appropriate because the Petitioner was found deportable following a hearing and that there is no administrative relief available to her. *Id.*, at 59. The district director advised the Petitioner that arrangements had been made for her departure to Israel and that she should report to the INS in Arlington, Virginia on January 25, 2001 prepared for departure. *Id.* At the request of Petitioner's attorney, the appointment was rescheduled for January 26, 2001. *Id.* Petitioner did not appear at the INS on January 26, 2001. *Id.*, at 50–51.

On January 17, 2001, Petitioner's husband, Mr. Cohen, completed a Form I–130 petition for alien relative. *Id.*, at 29–30.[4] This application indicates that Petitioner would apply for adjustment of status to that of a lawful permanent resident or, if not eligible for an adjustment of status, apply for a visa abroad at the American Consulate in Ciudad Juarez, Mexico. *Id.*, at 30.

On January 23, 2001, Petitioner filed an Application for Stay of Deportation or Removal until December 31, 2001 which was prepared by her attorney. *Id.*, at 24. On January 23, 2001, Petitioner's attorney also sent a letter requesting a stay of deportation or deferred enforced deportation. *Id.*, at 21–23. On January 26, 2001, the deportation officer rejected Petitioner's application for stay of deportation because the application was not accompanied by a valid travel document. *Id.*, at 20. On February 5, 2001, the district director sent another letter to the Petitioner advising her to report to the INS office in Arlington, Virginia on March 8, 2001 prepared for deportation. *Id.*, at 19.

On March 7, 2001, Petitioner filed with this Court an application for writ of *habeas corpus* pursuant to Section 2241.[5] On March 8, 2001, a Magistrate Judge held a hearing on Petitioner's *habeas* application at which Petitioner was present.[6] The Court secured the parties' agreement that Petitioner would report to the deportation officer on March 12, 2001 with airline tickets for her and Boris to depart the United States within 30 days. Dkt. 3, at 4. On March 12, 2001, Petitioner met with the

deportation officer. Petitioner possessed airline tickets for her and Boris to depart the United States on April 2, 2001 and to arrive in Israel on April 3, 2001. Petitioner, however, was unable to produce to the deportation officer the requisite travel documents or proof that she had completed the application process to obtain those documents. Petitioner advised the deportation officer that she intended to apply for the travel documents at the Israeli consulate following their meeting. On March 16, 2001, Petitioner provided the United States with copies of materials indicating that she had applied to the Israeli consulate for the necessary travel documents. At no point was the Petitioner taken into the physical custody of the INS.

On March 26, 2001, the United States filed its Answer to Petition for Writ of Habeas Corpus Under Section 2241 in which it opposed Petitioner's *habeas* application. The Government argued that the Immigration Judge's decision was valid and enforceable at the time it was issued and that there existed no grounds to reopen the Petitioner's immigration case. The United States also argued that relief under Section 2241 was not available to the Petitioner because she was not held in detention by the INS.

## II. Discussion

Ms. Futeryan–Cohen's *habeas* Petition touches upon several interesting issues, some of which are matters of first impression. This Opinion discusses (1) whether the Court possesses jurisdiction over Peti-

---

4. This form also indicates that a separate Form I-130 Petition was being filed by Mr. Cohen for his stepson Boris. *Id.*, at 30.

5. The Section 2241 petition was signed only by Ms. Futeryan–Cohen and not by the attorney, Mr. Singh, who represented her before the Immigration Judge and had recently sent letters on her behalf to the INS. Mr. Singh

never entered an appearance in Petitioner's *habeas* matter, and he was not present at the hearing.

6. Obviously, because Petitioner was present at this hearing in Norfolk, she did not report to the deportation officer in Arlington on March 8, 2001.

tioner's application for a writ of *habeas corpus,* and (2) the merits of her petition. For the reasons stated from the bench on March 29, 2001 and set forth below, the Court finds that it has jurisdiction over Ms. Futeryan–Cohen's petition and can properly rule on the merits of her claims. Further, the Court finds that Ms. Futeryan–Cohen is entitled to apply for discretionary relief from deportation, and grants her and Boris Futeryan a stay of removal from the United States until such time as her application is decided.

## A. Jurisdiction

### 1. The IIRIRA's Restrictions on Judicial Review

██ "Since its inclusion in the Judiciary Act of 1789, § 2241 has given district courts jurisdiction to grant writs of habeas corpus to petitioners who are held in custody by the federal government in violation of the Constitution, laws, or treaties of the United States." *Bowrin v. INS,* 194 F.3d 483, 487 (4th Cir.1999). In 1996, Congress passed two statutes that narrowed the rights of certain classes of immigrants and restricted the jurisdiction of federal courts to review aliens' claims. These statutes are the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 (1996). Although the United States has not raised the issue, the Court shall address briefly the question raised by enactment of the AEDPA and IIRIRA as to whether federal courts still possess jurisdiction to consider *habeas* petitions filed by aliens pursuant to Section 2241. *See, e.g., Mapoy v. Carroll,* 185 F.3d 224, 230 (4th Cir.1999).

The IIRIRA revised the INA's judicial review scheme to include, *inter alia,* new restrictions on judicial review of the Attor-

ney General's "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g); *Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 473, 119 S.Ct. 936, 938, 142 L.Ed.2d 940 (1999). Specifically, the IIRIRA amended the INA to provide:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g).

Although passed in 1996, the IIRIRA did not take effect until April 1, 1997. The IIRIRA, however, includes transitional rules that apply to removal cases, such as Ms. Futeryan–Cohen's, which were pending prior to the IIRIRA's effective date. *See* IIRIRA § 309(c); *Selgeka v. Carroll,* 184 F.3d 337, 341 (4th Cir.1999). "Although the general rule set forth in Section 309(c)(1) of the IIRIRA is that the revised procedures for removing aliens, including the judicial review procedures of Section 1252, do not apply to aliens [covered by the transitional rules], Section 306(c)(1) of the IIRIRA directs that a single provision, Section 1252(g), shall apply 'without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings.'" *See AAADC,* 525 U.S. at 477, 119 S.Ct. 936 (quoting IIRIRA Section 306(c)(1)). Due to this apparent internal conflict within the IIRIRA, some confusion has developed over whether the IIRIRA eliminated federal court jurisdiction to hear Section 2241 *habeas* petitions filed by aliens subject to removal.

The Fourth Circuit, however, has resolved this issue, at least with respect to *habeas* petitions for relief from deportation proceedings that are governed by the IIRIRA's transitional rules. *See Bowrin,* 194 F.3d at 489–90; *Tasios v. Reno,* 204 F.3d 544, 547 (4th Cir.2000). The Fourth Circuit has joined several other circuits in holding that "absent express congressional intent in the language of the AEDPA or the IIRIRA to eliminate general federal habeas corpus review pursuant to 28 U.S.C.A. § 2241, the remedy remains available." *Bowrin,* 194 F.3d at 489. Even under the IIRIRA's permanent rules, it is likely that district courts retain jurisdiction over immigrants' *habeas* petitions. *See Woo v. Reno,* 2000 WL 1481302, *9 (D.Md.2000) (in light of the Fourth Circuit's ruling in *Bowrin* that Congressional elimination of *habeas* review must be express, district court found "persuasive the reasoning of those courts that have found jurisdiction over habeas petitions under the permanent rules").

Therefore, the Court finds that, despite the IIRIRA's restrictions on judicial review, it possesses jurisdiction over the subject matter of Ms. Futeryan–Cohen's Section 2241 *habeas* petition. Importantly for the instant case, the Fourth Circuit recently clarified that "district courts reviewing aliens' habeas petitions filed pursuant to § 2241 may consider both statutory and constitutional questions when presented." *Bowrin,* 194 F.3d at 490.

### 2. Custody

■ The INS argues that because the Petitioner is not in the physical custody of the United States, Section 2241 *habeas* relief is not available to her. Although the Fourth Circuit does not appear to have addressed this issue, several other jurisdictions have held that aliens subject to final deportation orders are "in custody" for purposes of Section 2241 even if they are not literally in the physical custody of

the United States. *See, e.g., Aguilera v. Kirkpatrick,* 241 F.3d 1286 (10th Cir.2001) ("Although the petitioners in this case are not being 'detained,' they are 'in custody' for habeas purposes because they are subject to final deportation orders"); *Mustata v. U.S. Dept. of Justice,* 179 F.3d 1017, 1021, n. 4 (6th Cir.1999) ("Because the Mustatas' period of voluntary departure expired on the day they filed their habeas petition, at that time they faced a final order of deportation, placing them constructively 'in custody' under 28 U.S.C. § 2241"). Accordingly, the Court finds that it possesses jurisdiction over the Petitioner's application for a writ of *habeas corpus* under Section 2241 even though the INS is not holding her in detention.

### B. Merits of Petitioner's Claims for *Habeas* Relief

Petitioner offers the following grounds for *habeas* relief: (1) the Immigration Judge's November 9, 1995 order does not constitute a valid deportation order because it failed to provide a specific date by which the Petitioner was required to voluntarily depart and failed to provide her with the warnings required under 8 U.S.C. § 1252b; (2) Due Process requires that the Immigration Judge's order be reopened to determine whether it may be converted to a deportation order, as interpreted by the INS; (3) Due Process affords the Petitioner a right to have her deportation proceedings reopened so that she may request asylum based on the changed country conditions in Israel for Russian Jews; and (4) the possibility that Petitioner's immigration status may be adjusted. Each of these claims is addressed below.

### 1. Petitioner's Claims Related to the Immigration Judge's Order

Petitioner's first and second claims for *habeas* relief relate to the Immigration

Judge's November 9, 1995 order permitting the Futeryans to voluntarily depart from the United States. These claims are without merit.

█ "Because voluntary departure is premised on an alien's being able and willing to promptly depart the United States, an Immigration Judge may not grant voluntary departure for an indefinite period of time." *In re Shaar*, 21 I & N Dec. 541, 1996 WL 426889 (BIA July 11, 1996); *Matter of Chamizo*, 13 I & N Dec. 435, 1969 WL 17000 (BIA Nov. 28, 1969) ("The grant of voluntary departure must provide for a definite period of time within which to depart and be coupled with an alternate order of deportation in the event respondent does not depart within that time"). Here, even though the Immigration Judge's written order permitting voluntary departure did not set forth a specific date by which the Futeryans were required to leave the United States, it is clear from the record submitted by the INS that the Immigration Judge advised the Futeryans and their counsel orally of a May 9, 1996 deadline for their departure. Indeed, the Futeryans' attorney acknowledged the May 9, 1996 deadline in his May 5, 1996 letter requesting that the deadline be extended. The district director denied the request, but amended the date for their voluntary departure to June 18, 1996 so that Boris could complete the school year in the United States. The Futeryans were given written notice of this revised departure deadline.

█ An alien does not have any constitutional or statutory right to be provided written notice of the deadline for voluntary departure. The regulations in effect at the time the Immigration Judge's decision was rendered provided that "[a] decision of the Immigration Judge may be rendered orally or in writing. If the decision is oral, it shall be stated by the Immigration Judge in the presence of the parties and a memorandum summarizing the oral decision shall be served on the parties." 8 C.F.R. § 3.37 (1994).[7] The Petitioner received both oral notice of the deadline for her voluntary departure and a written order summarizing the proceedings before the Immigration Judge. Petitioner clearly was aware of the original and modified deadlines for her departure, and the notice that she received is sufficient to satisfy the requirements of Due Process.

Nor would the fact, even if true, that the Immigration Judge failed to provide Ms. Futeryan–Cohen with the warnings called for under Section 242B(e)(2) of the INA render the Immigration Judge's decision permitting voluntary departure defective in a way that is material to Ms. Futeryan–Cohen's *habeas* petition. Prior to its repeal in 1996, Section 242B(e)(2) of the INA provided, in pertinent part, as follows:

(A) IN GENERAL. Subject to subparagraph (B), any alien allowed to depart voluntarily under section 244(e)(1) or has agreed to depart voluntarily at his own expense under Section 242(b)(1) who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for the relief described in paragraph (5)[8] for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectfully.

---

7. The current regulations governing the form of decisions by Immigration Judges are found at 8 C.F.R. §§ 3.37, 240.12, 240.13.

8. Under Section 242B(e)(5), the relief described in subparagraph (A) above included voluntary departure under Section 242(b)(1), suspension of deportation or voluntary departure under Section 244, and adjustment or change of status under Sections 245, 248, or 249. *See, Shaar*, 21 I & N Dec. 541.

(B) WRITTEN AND ORAL NOTICE REQUIRED. Subparagraph (A) shall not apply to an alien allowed to depart voluntarily unless, before such departure, the Attorney General has provided written notice to the alien in English and Spanish and oral notice either in the alien's native language or in another language the alien understands of the consequences under subparagraph (A) of the alien's remaining in the United States after the scheduled date of departure, other than because of exceptional circumstances.

Thus, Section 242B mandated a period of ineligibility for certain forms of relief for any alien allowed to voluntarily depart who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, after having been given proper notice of the consequences of failing to timely depart. *Shaar*, 21 I & N Dec. 541.

█ It is not necessary for the Court to make any finding with respect to whether the Immigration Judge issued the warnings described in Section 242B(e)(2). A failure to issue such warnings would not constitute a deprivation of some constitutional or statutory right such that a stay of removal would be justified to permit the Petitioner to benefit from the right. The Immigration Judge's alleged failure to issue these warnings does not create an entitlement to apply for any form of discretionary relief.[9]

█ Finally, there is no constitutional or statutory requirement that an alien be granted a hearing before an Immigration Judge's order permitting voluntary depar-

ture can be converted to a final order of deportation due to an alien's failure to depart in a timely fashion. The Immigration Judge's order expressly advised the Petitioner that "if [she] fails to depart as required, the above order shall be withdrawn without further notice or proceedings and the following order shall thereupon become immediately effective: respondent shall be deported to Israel on the charge(s) in the Cause." Exhibit A, at 81.

For these reasons, the Court finds that the Immigration Judge's November 9, 1995 order permitting the Futeryans to voluntarily depart from the United States did not operate to deprive the Petitioner of any constitutional or statutory right. The Petitioner's first and second claims for *habeas* relief, accordingly, are denied.

### 2. Petitioner's Right to Make an Asylum Petition

On September 1, 1994, the INS denied Mr. Futeryan's asylum petition, which seems to have been filed on behalf of himself, Petitioner, and Boris. This asylum petition was premised on the treatment that he and his family received in Israel as Russian emigres. On May 9, 1996, the Petitioner appeared before the Immigration Judge and waived any further claims for asylum and any right to appeal. Presently, Petitioner claims a right to file a new petition for asylum based upon changed country conditions in Israel and the fact that her "irate" ex-husband resides in Israel.

**9.** The absence of such warnings, however, may be relevant to whether the Petitioner's failure to voluntarily depart is grounds for the denial of the discretionary relief—*e.g.*, adjustment in her immigration status pursuant to Section 245 of the INA—that the Court's stay of removal is intended to permit her to pur-

sue. If these warnings were not issued, perhaps Petitioner would not be precluded, on the basis of her failure to depart voluntarily, from seeking such discretionary relief. The Court does not reach this issue because doing so is not necessary to rule on the pending *habeas* petition.

An alien is permitted to move to reopen an asylum petition based upon new facts to be proven at a hearing. 8 C.F.R. § 3.23(b)(3). Ordinarily, however, a motion to reopen a determination made by an Immigration Judge must be made within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion, or on September 30, 1996, whichever is later. 8 C.F.R. § 3.23(b)(1). An exception to this time limitation exists if "the basis for the motion to reopen is to apply for asylum under section 208 of the [INA] [10] or withholding of removal under section 241(b)(3) of the [INA] [11] or withholding of removal under the Convention Against Torture, and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." 8 C.F.R. § 3.23(b)(4). The regulations provide that a motion to reopen does not automatically stay the removal of an alien, but that the alien may request a stay and, if granted by an Immigration Judge, the alien shall not be removed pending disposition of the motion by an Immigration Judge. *Id.* If, however, "the original asylum application was frivolous, then the alien is ineligible to file either a motion to reopen or reconsider, or for a stay of removal." *Id.*

■ The Court finds that Petitioner has a statutory right to petition the INS to reopen her asylum application based upon changed country conditions. Accordingly, *habeas* relief is appropriate to permit her the opportunity to file a motion to reopen her asylum petition. *See Woo v. Reno*, 2000 WL 1481302 (D.Md. Sept 20, 2000) (granting application for writ of habeas corpus to permit alien the opportunity to apply for discretionary relief from deporta-

tion); *Tasios*, 204 F.3d at 552–53 (affirming district court's grant of *habeas* petition permitting alien to pursue discretionary relief).

**3. The LIFE Act**

■ Plaintiff's final basis for *habeas* relief is the possibility that her immigration status may be adjustable because she is the beneficiary of one approved and one pending Form I–130 Petition for Alien Relative and an approved Department of Labor certification. Ms. Futeryan–Cohen does not refer expressly in her *habeas* petition to the Legal Immigration Family Equity Act ("LIFE Act"), which amends the INA at 8 U.S.C. 1255(i). The Petitioner's Form I–130s and labor certification, however, might qualify her for the opportunity to apply for an adjustment to permanent resident status under the LIFE Act without having to first leave the United States. Accordingly, the Court finds that Petitioner is entitled to *habeas* relief staying her removal until such time as her qualification under the LIFE Act and application for adjustment to her immigration status is decided. *See Woo*, 2000 WL 1481302.

Section 245(i) of the LIFE Act amends the INA at 8 U.S.C. § 1255(i) to allow the Attorney General, in his discretion and if certain conditions are met, to adjust the status of an alien who has an immigrant visa immediately available to that of lawful permanent resident while the alien remains in the United States in lieu of applying for an immigrant visa at a U.S. consular office abroad. The interim regulations related to the LIFE Act, which were published in the Federal Register on March 26, 2001, explain that "[a]n alien must have

---

**10.** Section 208 is the general asylum provision of the INA. 8 U.S.C. § 1158.

**11.** Section 241(b)(3) places restrictions on the removal of an alien to a country where the alien's life or freedom would be threatened. 8 U.S.C. § 1231(b)(3).

been inspected and admitted or paroled, be eligible for an immigrant visa and admissible for permanent residence and, with some exceptions, have maintained lawful nonimmigrant status. The alien must not have engaged in unauthorized employment." 66 Fed.Reg. 16383. The LIFE Act adds a new sunset date of April 30, 2001 for the filing of qualifying petitions or applications (*i.e.*, Form I–130s and Department of Labor certifications) that enable the applicant to apply for an adjustment of status under Section 245(i).

To be "grandfathered" in to apply for an adjustment of immigration status under the LIFE Act, the alien must be the beneficiary of an immigrant visa petition (Form I–130) or a labor certification application that is (1) filed on or before April 30, 2001, and (2) "approvable when filed." *Id.* It appears that Petitioner may satisfy these requirements because she is the beneficiary of an approved Form I–130 (Ex. A, at 28), is the beneficiary of an approved labor certification (Ex. A, at 26), and is the beneficiary of a second Form I–130 filed by Mr. Cohen, which is pending (Ex. A, at 29–32). All of these were filed before April 30, 2001. The first Form I–130 and the labor certificate have actually been approved and, therefore, would have to be considered "approvable when filed." The second Form I–130 appears to have been properly filed, be meritorious in fact,[12] and be non-frivolous. *Id.*[13]

The interim regulations provide some guidance with respect to the LIFE Act's applicability to aliens subject to a final order for removal. These regulations provide that:

The LIFE Act Amendments contain no special provisions for reopening cases under Section 245(i) of the Act (8 U.S.C. 1255(i)) where an alien already is the subject of a final order of removal, deportation or exclusion. Accordingly, motions to reopen based on Section 245(i) will be governed by the Department's current rules regarding motions to reopen, 8 C.F.R. 3.23 (before the Immigration Judge) ..., which contain time and numerical limitations on the filing of such motions. The rules, however, do provide for limited exceptions to these time and numerical limitations, among which is a motion to reopen filed jointly by the alien and Service counsel in the case. *Therefore, an alien who is the subject of a final order who alleges eligibility for adjustment of status under Section 245(i) may contact the Service counsel to request the filing of a joint motion to reopen. The Service will exercise its discretion in reviewing the case. However, there are provisions in the [INA] which limit the Attorney General's ability to grant certain forms of discretionary relief, including adjustment of status, for a period of time, to particular categories of aliens with final orders, including but not limited to aliens ... who failed to voluntarily depart the United States within the time period specified.*

*Id.* (emphasis added).

Ultimately the INS may exercise its discretion to deny the Petitioner's applications for adjustment in her immigration status. The Petitioner, however, may qualify under the LIFE Act for the right to file for such discretionary relief without

---

**12.** There is no dispute that Mr. Cohen is a citizen of the United States and that he is married to the Petitioner.

**13.** The Court does not decide whether the Petitioner actually qualifies under the LIFE

Act. Rather, the Court merely finds that, because her claim that she may qualify under the LIFE Act is colorable, *habeas* relief is appropriate to permit her to receive a determination as to whether she so qualifies.

first leaving the United States. Further, as the above-quoted language indicates, the INS has the discretion not to go forward with removal where an alien qualifies under the LIFE Act. Therefore, the Court finds that Petitioner's *habeas* petition to stay deportation pending the resolution of her asylum application and her petition for adjustment in status are well taken.

## III. Conclusion

For the reasons stated from the bench during the March 29, 2001 hearing and set forth above, Ms. Futeryan–Cohen's petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 is **GRANTED**. The removal from the United States of Ms. Futeryan–Cohen and her son Boris Futeryan is stayed until such time as their prompt applications for discretionary relief are decided. Petitioner and Boris Futeryan shall not be detained by the INS while any such applications for discretionary relief are pending. Petitioner shall make whatever necessary applications or petitions for discretionary relief on Boris Futeryan's and Petitioner's behalf in accordance with the Court's March 29, 2001 Order.

The Clerk is **DIRECTED** to send copies of this Opinion to the *pro se* Petitioner and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**